IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 23-cr-00058-CNS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  TIMOTHY TACONI,

    Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT [ECF No. 47]

    The United States of America, by and through Matthew T. Kirsch, Acting United States Attorney for the District of Colorado, and Leah Perczak, Special Assistant United States Attorney, hereby respectfully responds to the defendant's Objections to the Presentence Investigation Report (PSIR) [ECF No. 48]. Each objection will be addressed in turn.

    The defendant has provided a number of objections to the Presentence Investigation Report (PSIR) [ECF No. 49], some of which affect the ultimate guideline calculations, and many of which do not. The government will respond to each, but notes that any objections that do not affect the guideline calculation and do not impact the Court's analysis under 18 U.S.C. § 3553(a), need not be resolved by the Court. The government has agreed to not object to a request for a downward variance to 40 months' imprisonment and will recommend a sentence of 40 months. See Plea Agreement [ECF No. 45].

A. **Objections Affecting the Advisory Guideline Range**

1. **Defendant's Objection 1:** The defendant objects to the application of a 10-level enhancement pursuant to USSG §2K2.1(b)(1)(E), arguing instead that the defendant possessed only between 25 and 99 firearms. The basis for the defendant's argument is that the government and probation assert a different number of firearms were possessed by the defendant in the course of the investigation, and that the documentation relied upon by both the government and probation is unreliable. The defendant incorrectly states the positions of the parties. The government notes explicitly the providence for the number of firearms sold or possessed by the defendant. ECF No. 45, p. 17, n. 5. Importantly, the first 250 firearms alleged by the government were seized from the defendant's home during the execution of a search warrant on January 23, 2033. These 250 firearms were seized and itemized by the ATF following the seizure[1]. The defendant's contention that these calculations must have been based upon "double counting" or unreliable documentation is without merit. Additionally, undercover confidential informants purchased three firearms and four silencers from the defendant between September of 2022. These weapons alone total 257.

2. The government further details where the remaining roughly 240 firearms were seen or sold. The plea agreement details the number of firearms that witnesses observed the defendant selling at various gun shows, many of which

---

[1] See Exhibit 1. The ATF recovered numerous bags of firearm parts, each of which are legally considered a firearm. The estimate of 250 seized firearms is a conservative estimate based upon the volume of receivers and firearm parts seized. Further, more than 400 silencer parts were seized.

were viewed by ATF investigators. The government included the low-end estimates of the number of firearms and silencers that were witnessed being sold at these shows. Further, the purchasing records from the defendant and his wife in the operation of their business details the purchase or sale of 192 firearms. *See* PSIR Exhibit B, ECF No. 49-2]. The calculation of 499 total firearms is therefore on the low end of the range of the total number of firearms the defendant was seen selling or offering for sale.

3. However, the PSIR relies only on the 257 firearms seized or sold to undercovers in correctly applying the 10-level enhancement under §2K2.1(b)(1)(E), for offense conduct involving 200 firearms or more. Thus, while a *minimum* of 499 involved firearms can be estimated from the eyewitness statements, purchasing records, seized firearms and sales, the 257 firearms seized from the defendant's home or sold in undercover purchases requires the application of §2K2.1(b)(1)(E).

4. While the defendant asserts that between 25 and 99 firearms were involved in the defendant's offense conduct, the defendant provides no support for this argument. The defendant does not independently calculate how many firearms he believes can be attributed to this offense, stating without support that it was a number between 25 and 99. The defendant simply alleges that a number greater than 99 must be incorrect, and states that the government is unable to determine the accurate number of firearms involved, without providing his own calculations for the number he believes to be correct. Here, it is clear

that the defendant's conduct involved *at least* 257 firearms, requiring a 10-level enhancement under §2K2.2(b)(1)(E).

**B. Objections Not Affecting the Advisory Guideline Range**

5. The defendant makes a number of objections and clarifications to the PSIR that do not ultimately affect his advisory guideline range. With the exception of Objection 2, which addressed the recommended special conditions and Clarification 2, which addressed the current state of the defendant's SBA loan repayment, the Court need not resolve the defendant's remaining objections.

6. **Defendant's Objection 2:** The defendant objects to the recommendation of special conditions of supervised release 4, 8 and 11 of the PSIR, pursuant to 18 U.S.C. § 3583(d) as duplicitous.  This objection should be overruled.  The government disagrees that these conditions are duplicitous, but understands that in its Addendum to the PSIR, probation has modified its recommendation to remove Special Condition 13.  Special Conditions 4 and 8 are essential conditions of supervised release due to the defendant's past conduct, to include his fraudulent COVID-19 Economic Injury Disaster Loan application.

7. Notwithstanding the fact that the defendant received three clear notices that he could no longer operate A-TAC Arms by the ATF, the defendant obtained $186,000 in federal COVID-19 loan funding for the illegal gun business. On March 31, 2020, the defendant filed an application for a COVID-19 Economic Injury Disaster Loan (EIDL) on behalf of A-TAC Arms.  In the application, the defendant stated that he was the 100% owner of A-TAC Arms and that he

operated the business out of his residence.  The defendant falsely stated in the application that A-TAC Arms earned $33,087,362.00 during the twelve months prior to January 31, 2020, and had $11,029,121.00 in expenses during the same twelve months. The defendant further certified that the "Applicant is not engaged in any illegal activity (as defined by Federal guidelines)." This statement was false in light of the illegal activity described above. On May 22, 2020, the EIDL was funded, and A-TAC Arms received $150,000.

8. On April 30, 2020, the defendant applied for a Paycheck Protection Program (PPP) loan in the amount of $36,000 on behalf of A-TAC Arms.  In the loan application, the defendant stated that he operated A-TAC Arms out of his residence and A-TAC Arms had four employees.  The defendant certified that "The Applicant is not engaged in any activity that is illegal under federal, state, or local law." Again, this statement was false. This PPP loan was approved and funded on May 5, 2020. On December 17, 2020, the defendant applied for this loan to be forgiven by the Small Business Administration.  The defendant's loan forgiveness application was approved, and the loan was settled by the SBA on January 11, 2021.

9. In addition to the two loans described above, the defendant attempted to obtain additional loans totaling an estimated $154,100. He applied for an EIDL for A-TAC Arms on July 30, 2020. He said the company had 5 employees and 2019 gross revenues of $500,000 and COGS of $250,000. He also attempted to obtain an EIDL for A-TAC Arms on February 12, 2021.  He said the company had 3 employees and 2019 gross revenues of $85,600 and COGS of $27,450. He did

not send the required documentation for these loans and therefore did not ultimately receive additional money.

10. The government is in agreement with the inclusion of Special Conditions 4 and 8, as they specifically address the defendant's expressed desire to continue to operate a small business. The government has serious concerns about the defendant's record keeping and fraudulent inflation of his small business revenue to obtain an SBA loan. The imposition of these two Special Conditions is necessary to monitor the defendant's future business finances and to ensure that the same conduct does not occur in the future.

11. **Defendant's Clarification 1 (PSIR Paragraph 4):** The government has no additional information to provide as to the defendant's attendance of gun shows while on pretrial release. As such, the government takes no position on the objection.

12. **Defendant's Clarification 2 (PSIR Paragraph 47):** The government has provided to probation the current, outstanding amounts owed to the Small Business Administration, which totals $191,655.86, per the Certificates of Indebtedness. *See* Second Addendum to Presentence Report, Exhibit A [ECF No. 56-1]. The defendant does not dispute the amount owed, and the Court need not take action on the defendant's clarification, as the amount owed to the SBA has been clarified.

13. **Defendant's Clarification 3 (PSIR Paragraph 74:** The government takes no position as to this clarification, as it has been resolved.

14. **Defendant's Clarification 4 (PSIR Paragraph 78):** The government has no additional information to provide regarding the defendant's wife's employment status.

15. **Defendant's Clarification 5 (PSIR Paragraph 80):** The government takes no position as to this clarification, as it has been resolved.

16. **Defendant's Clarification 6 and 7 (PSIR Paragraphs 81 and 83):** The government has no additional information to provide as to the defendant's possession of weapons, but notes that the safe in question was operational when seized by the ATF.

17. **Defendants Clarification 8 (PSIR Paragraph 84):** The government takes no position as to this clarification.

18. **Defendant's Clarifications 9, 10 and 11 (PSIR Paragraphs 92, 95 and 96):** The government is in receipt of the Statement of Dissolution from the defendant and has insufficient evidence to dispute the defendant's assertion that he has dissolved his business, but notes that as recently as April of 2024, an employee of the defendant's business, A-Tac Arms stated that he was still conducting business and selling weapons.  While the defendant contends that the employee, Jonathan White, was conducting business with Ms. Taconi, it is of grave concern to the government that in April of 2024, A-Tac Arms was still operational and selling weapons at gun shows. *See* Defendant's Objections to Presentence Investigation Report [ECF No. 48], p. 7.  Prior to the dissolution of the business, Mr. White reported that he was attending gun shows with Ms. Taconi and still selling upper and lower receivers. As this clarification does not

affect the defendant's advisory guideline range, the Court need not rule upon it. However, Mr. White's statements to the US Probation Officer are relevant consideration for the Court in assessing the defendant's compliance with conditions of pretrial release, and his future risk to the community.

19.     **Defendant's Clarification 12 (PSIR Paragraph 97):**  The government takes no position as to this clarification.

20.     **Defendant's Clarification 13 (PSIR Paragraph 100):** The government has no additional information to provide as to the location of the defendant's prior businesses.

21.     **Defendant's Clarification 14 (PSIR Paragraph 107):** The defendant notes that the 3D printer observed in his home during his home visit is used "to fabricate socket organizers, tool holder, knickknacks and toys."  The government has insufficient evidence to prove the use to which the defendant is currently putting his 3D printer, but notes that the defendant's conduct in this case included the prolific 3D printing of firearm receivers.  The ATF seized a Ghost Gunner machine, a number of privately manufactured firearms or "PMFs" and a significant amount of 3D printing filament from the defendant's home on February 23, 2023.  The government is concerned that the defendant may again attempt to manufacture and sell PMFs in the future and finds the argument that he purchased a new 3D printer simply to print knickknacks to be specious.  As this clarification does not affect the defendant's advisory guideline range, the Court need not resolve the clarification, but the defendant's possession of a 3D printer is certainly relevant for the Court's sentencing determination.

22. **Clarification 15 (PSIR Paragraph 108):** The government takes no position as to this clarification.

23. **Clarifications 16 and 17 (PSIR Exhibit C):** The defendant contends that Exhibits C and E should not be considered by the Court, because they are dated November of 2023, 10 months after the defendant was indicted for his conduct in this case. While the two letters provided in Exhibits C and E are from November of 2023, they are explaining recent examinations of "solvent traps" that are actually considered to be silencers under the National Firearms Act (NFA). The illegality of silencers predates the November 2023 letter, and items labeled as "solvent traps" that function or are designed to function as silencers were illegal since the passage of 18 U.S.C. 921(a)(25). The defendant need not have received the open letter from the ATF to be aware that the sale of "solvent traps" and silencers are subject to the preconditions of the NFA. The Court should consider the defendant's conduct in light of the ATF's explanation of solvent traps and their regulation under the NFA.

## C. CONCLUSION

For the reasons stated above, the government respectfully requests that the Court overrule the defendant's objections to the advisory guideline range and the enhancement under §2K2.1(b)(1)(E), and impose the Special Conditions recommended by probation. The Court need not resolve the remainder of the defendant's clarifications, as they do not impact his advisory guideline range.

                                                  Respectfully submitted,

                                                  MATTHEW T KIRSCH
                                                  Acting United States Attorney

By: *s/Leah Perczak*
LEAH PERCZAK
Special Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: (303) 454-0100
Fax: (303) 454-0405
E-mail: leah.perczak@usdoj.gov

Attorney for the government

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 3, 2024, I electronically filed RESPONSE TO OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT (PSIR) with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties on record.

                                        *s/Leah Perczak*
                                        Leah Perczak
                                        Special Assistant United States Attorney